IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| COLETTE CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-1588 (RDA/IDD) |
| | ) | |
| LOUDOUN COUNTY | ) | |
| SHERIFF'S OFFICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Loudoun County Sheriff's Office's ("LCSO") and Michael L. Chapman's ("Sheriff") Motion to Dismiss ("Motion"). Dkt. 9. Considering the Motion together with Plaintiff Colette Cunningham's Complaint (Dkt. 1), Defendants' Memorandum in Support (Dkt. 10), Plaintiff's Opposition (Dkt. 11), and Defendants' Reply (Dkt. 12), the Court GRANTS Defendants' Motion for the reasons that follow.

### I.  BACKGROUND[1]

#### A.  Factual Background

The LCSO once employed Plaintiff as a First Lieutenant, making her the highest-ranking female officer in the LCSO at the time.  Dkt. 1 ¶ 20.  Prior to filing this suit, Plaintiff previously filed a complaint in this District on November 29, 2023, alleging illegal sex-based discrimination under Title VII, among other claims. *See generally Cunningham v. Loudoun County Sheriff's*

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

1

*Office*, 2024 WL 4495489 (E.D. Va. Oct. 15, 2025); *see also* Dkt. 1 ¶ 70. In that case, Plaintiff alleged that Captain Thomas Gilligan ("Gilligan"), Plaintiff's supervisor, repeatedly harassed Plaintiff from January 2020 until June 2020. Dkt. 1 ¶¶ 37–38. Plaintiff documented the harassment she experienced and made several complaints to the Sheriff and other superiors within the LCSO. *Id.* ¶ 39. Although the Sheriff removed Gilligan as Plaintiff's daily supervisor, Gilligan remained a supervisor, enabling Gilligan to write negative performance reviews regarding Plaintiff. *Id.* ¶ 40.

Ultimately, the LCSO rescinded these negative reviews and removed Gilligan from command of the Eastern Loudoun Station where Plaintiff worked. *Id.* ¶¶ 40, 42–43. The LCSO then gave Plaintiff new responsibilities, effectively making her a *de facto* "acting captain"—a higher position than First Lieutenant. *Id.* ¶¶ 33, 46, 52. The LCSO did not give her the official title of "Captain," despite awarding that honor, in similar situations, to male officers. *Id.* ¶ 50. These additional responsibilities gave Plaintiff a burdensome schedule. *Id.* ¶¶ 51, 55 ("[Plaintiff was] the only woman in the role of running a station, was required to perform shiftwork, and was not permitted a Monday through Friday schedule."). Plaintiff requested various schedule accommodations, which Defendants denied despite granting similar requests to male officers. *Id.* ¶¶ 52–54. In her prior case, Plaintiff alleged that her mistreatment culminated in Defendants allegedly manufacturing reports of poor performance to justify demoting Plaintiff. *Id.* ¶¶ 58–63. U.S. District Judge Michael S. Nachmanoff dismissed that first case on February 21, 2025, and that case is now on appeal. *See generally Cunningham*, 2024 WL 4495489.

Plaintiff filed her EEOC Charge of Discrimination related to her prior case "on or about March 18, 2021." Dkt. 10 at 11 (citing *Cunningham*, 2024 WL 4495489, Dkt. 111 at 13). On or about July 5, 2021, Plaintiff sought short-term disability and leave under the Family and Medical

2

Leave Act ("FMLA") because of symptoms of post-traumatic stress disorder ("PTSD") that she alleges that she developed during the EEOC investigation. Dkt. 1 ¶ 71. Plaintiff was on leave through October 5, 2021, and, during that time, Plaintiff was protected under the FMLA. *Id.* ¶ 72. On September 22, 2021, before Plaintiff's leave was set to expire, Lieutenant Brian Wacker indicated in a text message to the Sheriff's Personnel Department that he had assumed the position of Eastern Loudoun Assistant Station Commander. *Id.* At around the same time, Plaintiff also requested an extension of her medical leave, which Defendants denied on September 29, 2021. *Id.* ¶ 73. Plaintiff asserts, however, that Defendants granted similar extension requests to other male officers but does not identify those officers or their circumstances. *Id.*

On October 12, 2021, Plaintiff was notified that she was being evaluated for a short-term disability after Plaintiff initiated the Americans with Disabilities Act ("ADA") interactive process at the Sheriff's direction. *Id.* ¶¶ 74, 76–77. On November 12, 2021, the LCSO approved Plaintiff's short-term disability leave—a program that does not provide job protections—through January 1, 2022. *Id.* ¶¶ 77, 79.

While Plaintiff was on leave, she had a dispute with Defendants over her medical examinations. *Id.* ¶¶ 79–90. At the time her short-term leave was expiring, Plaintiff had not received medical clearance from her doctors, which Plaintiff thought meant that she could not return to her position. *Id.* ¶¶ 79–80. She sought a further extension of her short-term disability leave through February 1, 2022. *Id.* ¶ 80. Defendants first sought to have Plaintiff undergo a fitness for duty examination on January 5, 2022, which Plaintiff believed was a pretext for discrimination. *Id.* ¶ 81. Plaintiff was approved for the short-term disability extension through February 1, 2022, and, on January 8, 2022, became eligible for long-term disability. *Id.* ¶ 83. Plaintiff believes that she is being singled out and that no one else has been subject to such a fitness

for duty request but does not set forth the basis for her knowledge or the relevant policies that would govern such determinations. *Id.* ¶ 84.

On January 10, 2022, Defendants formally requested that Plaintiff undergo a fitness for duty medical evaluation, giving her until January 13 to register for the evaluation. *Id.* ¶ 85. Plaintiff asserts that, pursuant to the employee handbook, employees who failed to meet required medical fitness standards may be subject to dismissal or other discipline. *Id.* ¶ 87. Plaintiff notes that, pursuant to the provisions governing the medical leave, "a department head should approve available paid leave or leave without pay until the determination about such employees condition is completed." *Id.* ¶ 88. Plaintiff does not allege that she sought to have such leave approved. Plaintiff further alleges: "if a healthcare practitioner's evaluation states that an employee is not able to return to work to perform essential functions within 26 weeks from the date the condition began, for operational needs, the employee can receive an extension for an additional 12 weeks providing the employee cannot physically return to full duty and the request is supported by the Department Director." *Id.* Plaintiff asserts that she "was retaliated against because other Sheriff's deputies have been given the entire 38 weeks authorized by the handbook to deal with medical conditions." *Id.* Plaintiff does not identify further details regarding these other deputies. Plaintiff further alleges that the employee handbook provides that any medical examination must be completed "within 30 days from the date of the request." *Id.* ¶¶ 89–90.

Plaintiff requested an extension to respond because her attorney had contracted COVID and was unavailable to assist. *Id.* ¶ 92. On January 14, 2022, Plaintiff asked human resources for further clarification regarding the deadline, but Plaintiff alleges that Defendants already made the decision to terminate her. *Id.* ¶¶ 91, 93. That same day, Plaintiff alleges Defendants "fired" her. *Id.* ¶ 91.

4

Thereafter, Plaintiff requested that Defendants re-classify her termination as a "medical separation in good standing with the department" and that they send that clarification out in a "personnel action." *Id.* ¶ 94. Cunningham also asked for retirement credentials and her service weapon for one dollar as authorized by Virginia statute. *Id.*

Although the official statement from Defendants said they terminated Plaintiff, Defendants' human resources department sent Plaintiff a letter on January 20, 2022, sharing information about her retirement benefits. *Id.* ¶ 95. Plaintiff sent an application for disability retirement benefits. *Id.* ¶ 96. Plaintiff then had her counsel send a letter to Defendants indicating that her termination was in violation of policy and that she viewed these actions as in retaliation for her EEOC Complaint. *Id.* ¶ 97. The County Attorney's Office responded on February 7, 2022, and asserted that Plaintiff "could not receive her service weapon because she was not 'retired' but had been separated." *Id.* ¶ 98. Plaintiff identifies six other deputies who she asserts were permitted to retire and to keep their service weapons. *Id.* ¶ 100.

Plaintiff further identifies Deputy Jordan Leverich ("Leverich") who she alleges was found to have been in violation of policies relating to immoral conduct and improper activities with juveniles. *Id.* ¶ 101. Plaintiff alleges that, despite these violations, Leverich was not terminated. *Id.*

### B.  Procedural Background

Plaintiff filed her Complaint on September 22, 2025. Dkt. 1. Defendants filed their Motion on December 10, 2025. Dkt. 9. Plaintiff opposed the Motion on December 29, 2025. Dkt. 11. Defendants filed their reply on January 5, 2026. Dkt. 12.

### II.  STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court considers the sufficiency of a complaint.

*Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015), *vacated on other grounds*, 579 U.S. 924 (2016)). Still, "conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Ass'n. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted) ("While we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts. Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III.  ANALYSIS

Plaintiff asserts two retaliation claims: one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") (Count I), and the other under 42 U.S.C. § 1983 (Count

6

II). Dkt. 1. Defendants seek to dismiss both Counts I and II. Dkt. 9. The Court will address each argument in turn.

### A.  Title VII Retaliation

"To make a *prima facie* claim of retaliation, a plaintiff must show: (1) that she engaged in protected activity, (2) that [the defendants] took a materially adverse action against her[,] and (3) [that] there is a causal connection between the protected activity and the adverse action." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–68 (2006)). Here, Plaintiff has plausibly alleged that she engaged in protected activities and that Defendants took materially adverse actions against her, but she has failed to plausibly allege a direct causal connection, sufficient temporal proximity, or a reasonable inference of retaliation from the relevant facts.

### i.     Protected Activity

Here, Plaintiff participated in protected activities under Title VII when she filed a complaint with the EEOC and filed her case in this District. Dkt. 1 ¶ 104. "Protected activity under Title VII is divided into two categories, opposition and participation." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 257 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). Protected activity includes "the right to file an EEOC charge or similar complaint with a state agency." *Thomas v. City of Annapolis*, 851 F. App'x 341, 350 (4th Cir. 2021) (citing 42 U.S.C. § 2000e-3(a)); *see also Jones v. HCA*, 16 F. Supp. 3d 622, 634 (E.D. Va. 2014) (citing *Laughlin*, 149 F.3d at 259) (holding that "filing an EEOC charge is protected activity"). Filing a lawsuit against an employer also constitutes a protected activity. *See McNairn v. Sullivan*, 929 F.2d 974, 980 (4th

Cir. 1991) (recognizing that an employee engaged in protected activity by bringing an employment discrimination lawsuit). Thus, Plaintiff engaged in protected activities.[2]

To the extent that Defendants argue that Plaintiff cannot premise her Complaint here on alleged complaints that she made to her supervisors, Defendants are correct. Those complaints are the subject of the initial disposition of Plaintiff's claims in the case before Judge Nachmanoff. *See Cunningham*, No. 23-cv-1626, Dkt. 2 at 1, First Amended Complaint filed on February 22, 2024 (E.D. Va.). Moreover, Defendants correctly note that the Complaint "does not include any new, specific allegations of complaints to her supervisors." Dkt. 10 at 5. Thus, Plaintiff cannot premise her retaliation claim on those now years-old complaints to supervisors which are the subject of the prior litigation, but she may proceed on her allegations that she engaged in protected activity when she filed her EEOC Charge and her lawsuit in this District.

### ii.      Materially Adverse Action

Defendants also assert that Plaintiff has failed to allege that they took a materially adverse action against her. Under Title VII, an employer's conduct constitutes an "adverse action" when the action is "materially adverse." *Burlington Northern & Santa Fe Ry.*, 548 U.S. at 57. Material adversity means the actions "must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* Plaintiff asserts Defendants took several adverse actions against her: (1) "[n]ot protecting her position when she was on [leave under the FMLA]," (2) "[d]enying her additional leave that was routinely provided to other deputies who had not filed EEOC complaints," (3) "[d]enying her additional short term disability leave routinely provided to other deputies who had not filed EEOC complaints," (4)

---

[2] Because these protected activities relate the to the litigation before Judge Nachmanoff, Plaintiff *should have* indicated to the Clerk's Office that this case was related to the first *Cunningham* case. Plaintiff failed to do so. Dkt. 1-1.

"[d]enying her a brief extension to speak to counsel who was unavailable due to COVID," (5) "[r]equiring her to provide a back to duty examine [sic] within less than the 30 days permitted by the Loudoun County Human Resources Policy," and (6) "[d]enying her credentials and the opportunity to purchase her service weapon when such accommodation was provided to others with significantly less service but who had not filed an EEOC complaint." Dkt. 1 ¶ 105. Notably, Plaintiff does not allege that her termination was the result of discrimination. Termination is clearly a materially adverse action, and the omission of her termination from the list that Plaintiff includes is glaring. Nonetheless, the Court analyzes the adverse actions identified by Plaintiff.

Defendants' alleged failure to protect Plaintiff's position while she was on FMLA leave does not constitute an adverse action under Title VII. This is because "retaliation claims under the various anti-discrimination statutes 'do not cross-pollinate,' meaning that a retaliation claim brought pursuant to a specific anti-discrimination statute must be based on a protected activity under that statute." *Blanchard v. Arlington Cnty.*, 2023 WL 2215807, at *9 (E.D. Va. Feb. 24, 2023) (quoting *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020)). On or about July 5, 2021, Plaintiff sought short-term disability and leave under the FMLA "due to the symptoms of PTSD that she was beginning to manifest" allegedly because of "the stress caused by the EEOC investigation and her treatment by the Sheriff's Office." Dkt. 1 ¶ 71. The FMLA protected her job status through October 5, 2021, but on September 22, 2021, Wacker indicated that he had assumed the position of Eastern Loudoun Assistant Station Commander. *Id.* ¶ 72. Defendants are correct that an employer's failure to adhere to FMLA leave requirements is not an adverse action under Title VII. *See Blanchard*, 2023 WL 2215807, at *9 ("[T]he Fourth Circuit has explained that retaliation claims under the various anti-discrimination statutes 'do not cross-pollinate.'"). But even construing Plaintiff's claim as properly stating a claim under Title VII, it

9

does not constitute an adverse action because that was not Plaintiff's position. As Plaintiff specifically alleges, Plaintiff was *not* the Station Commander; rather, she *de facto* held that position. Dkt. 1 ¶¶ 33, 46, 52 (alleging that Plaintiff performed "operational tasks as the *de facto* Station Commander"). Failing to protect a position that Plaintiff did not have cannot be considered a materially adverse action. Accordingly, Plaintiff has failed to plausibly allege that she suffered an adverse action in this regard.

The second and third actions alleged—regarding the denials of additional leave and short-term disability—could be "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry.*, 548 U.S. at 57. But, here, Plaintiff does not allege sufficient facts to establish that such conduct qualifies as materially adverse. The only leave that Plaintiff asserts that she was denied was an extension of her FMLA leave, which was denied on September 29, 2021. Dkt. 1 ¶¶ 73–74. To begin with, it is unclear why this denial would be considered materially adverse when the FMLA only provides for twelve weeks of leave. Moreover, although Plaintiff alleges that this act was adverse because it "required Cunningham to return to work while she was still being treated for severe PTSD," Plaintiff's remaining allegations undercut this claim, as Plaintiff was *not* required to return to work. *Id.* ¶ 73. Indeed, Plaintiff specifically alleges that she was pointed to other available leave sources and remained on leave through January 2022. *Id.* ¶¶ 74, 79. Thus, it is unclear how this decision was adverse, let alone materially so. Plaintiff does not allege that she was denied any short-term leave. *Id.* ¶¶ 79, 83 (alleging that her requests for short-term disability were approved). Accordingly, Plaintiff has failed to plausibly allege that she suffered a material adverse action in this regard.

The other adverse actions alleged may have caused frustration or put Plaintiff in a "less appealing" position, *Laird*, 978 F.3d at 893 (quoting *Holland*, 487 F.3d at 219), but none of them are materially adverse. *See Jordan v. S.C. Dep't of Transportation*, 797 F. App'x 101, 102 (4th Cir. 2020) (distinguishing material adversity from "trivial harms" (citing *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68)); *see also Nunez v. Lima*, 762 F. App'x 65, 69–70 (2d Cir. 2019) ("[E]ven if prompted by a retaliatory motive, 'trivial harms' or 'petty slights or minor annoyances' do not constitute actionable adverse acts." (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011))). Declining to extend a response timeline to confer with counsel is not the kind of materially adverse action that Title VII contemplates. *See Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, 2016 WL 3079466, at *37 (D.S.C. June 1, 2016) (finding no materially adverse action where defendant "refused to excuse a delay in filing a grievance"), *aff'd sub nom. Irani v. Palmetto Health*, 767 F. App'x 399 (4th Cir. 2019). Plaintiff's argument regarding the January 2022 communication regarding the medical examination also contradicts her own allegations. Plaintiff asserts that she was required to *register* for the medical examination before January 13, 2022—not that she was required to be *examined* before the 30-day timeframe. Dkt. 1 ¶ 85. Accordingly, Plaintiff has not alleged sufficient facts to demonstrate that requiring registration alone was materially adverse. Finally, Plaintiff alleges that the denial of retirement credentials and the opportunity to purchase her service weapon is materially adverse. Not so. As an initial matter, Plaintiff alleges that she was terminated—not retired. Dkt. 1 ¶ 95. Thus, it is unclear why she would receive these retirement benefits. In any event, the Fourth Circuit has held that similar claims fail to establish an adverse action. *See Thomas v. City of Annapolis*, 851 F. App'x 341, 345 (4th Cir. 2021) ("The denial of disability retirement was not an adverse employment action."); *cf. McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)

11

(concluding that revoking an officer's badge, service weapon, and credentials after she voluntarily took extended sick leave is not an adverse employment action in the context of a Title VII race discrimination claim). Thus, these actions also fail to plausibly allege a materially adverse action.

In short, where here Plaintiff does not rely on her termination as a materially adverse action, the other actions upon which she claims to rely are not plausibly alleged to be materially adverse.

### iii. Causation/Inference of Retaliation

Even assuming *arguendo* that Plaintiff has alleged a materially adverse action, Plaintiff plead facts that plausibly establish causation or an inference of retaliation. A plaintiff must plead but-for causation in her retaliation claim. *See Jones*, 16 F. Supp. 3d at 634 ("[A] plaintiff must plead that his or her protected activity constituted the 'but-for' cause of the materially adverse employment action by the employer." (citing *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013))); *see also Taylor v. Revature, LLC*, 2023 WL 6445857, at *8 (E.D. Va. Sept. 28, 2023) (requiring but-for causation to be sufficiently alleged at the pleading stage (citing *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 234 (4th Cir. 2016))). A plaintiff can assert this causal link in two principal ways—Plaintiff fails to sufficiently plead either. First, a plaintiff can allege a direct causal connection that "suggests that the adverse employment action occurred because of the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021) (citing *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). Second, a plaintiff can show that "the adverse act bears sufficient temporal proximity to the protected activity." *Johnson*, 839 F. App'x at 784 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Plaintiff relies solely on temporal proximity to establish causation. Dkt. 11 at 10.

Although Plaintiff asserts that she is relying on temporal proximity, her Opposition does not identify any of the relevant dates in this regard. Dkt. 11 at 10 (not discussing dates or timeframe). In that regard, it is notable that Plaintiff does not allege on what date Plaintiff filed her EEOC Charge or initiated EEOC proceedings. Plaintiff does allege, however, that the EEOC complaint was filed while she was the *de facto* acting captain. Dkt. 1 ¶ 33. Thus, taking all inferences in favor of Plaintiff, the Court infers that the EEOC Charge was filed in or around March 2021. *Id.* ¶ 45 ("She participated in all the Station Commander briefings and operated as the senior officer for the Eastern Loudoun Station from June 2020 through March 2021").[3] But the first alleged retaliatory act occurred in September 2021, well outside the range of what the Fourth Circuit considers temporally relevant for purposes of the causation analysis. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) ("Although there is no 'bright-line rule' for when temporal proximity helps or hurts a cause of action for retaliation, a two-month temporal gap 'between [ ] notice of the complaint and the adverse employment action is sufficiently long so as to weaken significantly the inference of causation between the two events.'" (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)) (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126–27 (4th Cir. 2021))). With respect to the first *Cunningham* litigation, the Court takes judicial notice of the fact that the complaint in Judge Nachmanoff's case was filed in November 2023 and thus could not be the basis for any retaliation. *See Kelly v. Town of Abingdon*, 558 F.3d 289, 304 (W.D. Va. 2021) (finding no retaliation where the decisionmakers "treated [the plaintiff] poorly before he filed his EEOC charges, and they continued to treat him poorly after he

---

[3] The Court also takes judicial notice of the EEOC charge in the first *Cunningham* litigation which is also incorporated by reference in this case. *See Cunningham v. Loudoun County Sheriff's Office et al.*, Case No. 1:23-cv-01626, Dkt. 111-13 (EEOC Charge filed on March 18, 2021).

13

filed his charges"). Thus, Plaintiff fails to allege facts sufficient to establish temporal proximity as a basis for causation.

Plaintiff argues that "the cumulative nature of the retaliatory actions" establishes temporal proximity. *Id.* But this argument is conclusory and insufficient to plausibly support Plaintiff's claims, as she does not explain what "cumulative nature" means here. This Court will not accept "conclusory allegations regarding the legal effect of the facts alleged." *Labram*, 43 F.3d at 921 (citing *United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F. 2d 1083, 1085–86 (4th Cir. 1979)).

Although the lack of a direct causal connection and temporal proximity does not necessarily preclude Plaintiff from establishing a causal link, Plaintiff offers no additional allegations to support causation. *See Smith v. CSRA*, 12 F. 4th 396, 417 (4th Cir. 2021) ("The existence of relevant facts alone . . . may be used to establish a causal connection between the protected activity and the adverse action." (quoting *Roberts*, 998 F.3d at 123)). Plaintiff's allegations in this regard are insufficient. Likewise, Plaintiff's attempts to establish causation and/or retaliatory animus by demonstrating that Plaintiff was treated differently than other persons fail because: (i) in most cases, Plaintiff fails to identify such persons or allege any specific facts in support of her conclusion that they were treated differently; and (ii) where Plaintiff does identify a comparator, Plaintiff fails to allege facts demonstrating that such comparator is similarly situated. Such allegations are insufficient to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678 (courts are not required to rely on "naked assertions devoid of 'further factual enhancement'"). In short, Plaintiff has failed to plausibly allege causation.

\*       \*       \*

14

Because Plaintiff has failed to plausibly allege facts supporting each element of a *prima facie* case of retaliation or otherwise establish a reasonable inference of retaliation, Plaintiff fails to state a claim in this regard and the Motion will be granted.

### B.    Section 1983 Retaliation

Plaintiff's Section 1983 retaliation claim is time-barred.  There is no precise or direct federal statute of limitations for Section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). Although 28 U.S.C. § 1658 created a default four-year federal statute of limitations, Section 1658 only applies to statutes "enacted after December 1, 1990," which does not include Section 1983. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 380 (2004).  Consequently, the relevant state statute of limitations for general personal injury applies. *See Owens v. Okure*, 488 U.S. 235, 239–40 (1989).  Under Virginia's statute of limitations for personal injury actions, a plaintiff bringing a civil rights action under Section 1983 in Virginia must do so within two years from the time her action accrues.  Virginia Code § 8.01–243(a); *see also Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 709 (E.D. Va. 2019) (applying the Virginia two-year statute of limitations to Section 1983 claims).  The most recent action of Defendants complained of by Plaintiff was on February 7, 2022.  Dkt. 1 ¶ 98.  Plaintiff filed her Complaint on September 22, 2025, long after the statute of limitations lapsed.  As a result, Plaintiff's Section 1983 retaliation claim is time-barred.

Plaintiff argues that her Section 1983 claim is timely because it is "based on Title VII violations." Dkt. 11 at 10.  Plaintiff asserts that the action accrues when the EEOC issues a right to sue letter. *Id.* at 11.  This interpretation is a misreading of the law and would subvert the statute of limitations requirement.  The Supreme Court of the United States has rejected a similar claim with respect to 42 U.S.C. § 1981. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975).

In *Johnson*, the Supreme Court recognized "that the remedies available under Title VII and under § 1981, although related . . . are separate, distinct, and independent." 421 U.S. at 461. Thus, the Supreme Court held that the filing of a Charge of Discrimination with the EEOC for a Title VII claim did not toll the statute of limitations for a § 1981 claim. *Id.* at 465–66. Other courts have similarly rejected Plaintiff's argument here. *See, e.g.*, *Boquet v. Lafourche Par. Sheriff's Off.*, 2000 WL 1511179, at *1 (E.D. La. Oct. 6, 2000) ("That one-year prescriptive period was not tolled while the Equal Employment Opportunity Commission investigated plaintiff's charges that defendant violated Title VII based on the same facts."); *Lamb-Bowman v. Del. State Univ.*, 1999 WL 1250889, at *9 (D. Del. Dec. 10, 1999) ("Moreover, because *Johnson*'s reasoning also applies to Section 1983 cases, federal courts have held that limitations periods for Section 1983 cases are not tolled by the filing of Title VII discrimination claims with the EEOC based on the same facts." (collecting cases)). Accordingly, Plaintiff's argument in this regard fails to persuade. Thus, the motion will also be granted with respect to Count II.

### C. Leave to Amend

Although Plaintiff failed to sufficiently allege a claim on which relief can be granted, she can still amend the Complaint, so long as it is not futile. Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). "When justice so requires" is a discretionary determination to be made by the Court, and the Fourth Circuit has interpreted Rule 15(a) to provide that leave to amend can be denied where the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). An amendment is futile where the proposed changes to the complaint would not aid the action in withstanding a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). In order to assess whether an amendment to a complaint would be futile, Plaintiff must provide

the Court with the substance of the amendment. *See Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *12 n.6 (E.D. Va. Nov. 12, 2020). Here, leave to amend Count II would be futile because it is time-barred, but the same cannot be said of Count I. Accordingly, the Court will permit Plaintiff to amend only Count I. Any amended complaint must be filed within 21 days of this Memorandum Opinion and Order.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 9) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Complaint (Dkt. 1) is DISMISSED. The dismissal is without prejudice with respect to Count I and with prejudice with respect to Count II; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file any amended complaint within 21 days of this Memorandum Opinion and Order.

It is SO ORDERED.

Alexandria, Virginia
April ___8___, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge